# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2010

No. 10-10107
Summary Calendar

Lyle W. Cayce
Clerk

TERRY R. JAMES, also known as Terry Ray James, also known as Terry James,

Plaintiff - Appellant

v.

FIESTA FOOD MART, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-00711-P

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Terry R. James ("James") appeals the district court's grant of summary judgment in favor of defendant-appellee, Fiesta Food Mart, Inc., ("Fiesta") on James' Title VII claims of employment discrimination. For the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10107

I.

Fiesta, a regional grocery chain, hired James, an African-American male, as a nighttime shelf stocker at one of Fiesta's stores in Dallas, Texas, in July 2008. During James' tenure at Fiesta, the company maintained written rules and policies that described, among other things, the perks available to Fiesta's stockers and the company's standards for workplace harassment. Fiesta permitted stockers to consume certain items from the store shelves for free; other items were available for consumption at cost. Fiesta provided its employees, including James, with a list of the available free items, and Fiesta warned that disciplinary action could result if an employee consumed items not on the free list without paying for them.[1] Fiesta also maintained an anti-harassment policy which directed employees who felt victimized by harassment to contact certain personnel to file grievances. Fiesta defined harassment as including verbal racial slurs but made clear that employees had to report harassment complaints to the proper persons within the company. James signed a form acknowledging he received training on Fiesta's policies.

While employed at Fiesta, James alleges co-workers "casually" used the term "nigga," and he voiced his dislike for its use "three or four times," citing the specific dates in his complaint. James asserts that at least one of the workers using the term was his immediate supervisor and that others were various "lead persons," "foremen," and "shift leaders." Fiesta does not deny that some of these co-workers held such informal titles, but it asserts that no individual James identified as using the offensive term was either a manager or official. James asserts in his complaint that he told an "elderly white haired caucasion" [sic] manager, later identified in James' summary judgment evidence as Mike Mayo, about his problems with the word's use in his presence on February 15, 2009, but

---

[1] Fiesta's policies also listed theft as grounds for immediate termination.

2

No. 10-10107

claims Mayo took no action. James admitted he never complained to other management officials about the treatment. On February 22, 2009, Le May terminated James after discovering that James consumed a food item that was neither paid for nor listed as a free item. James knew the item was not on the free item list but insists he would have paid for it. James' affidavit states that Hispanic coworkers were permitted to consume non-free items but were not disciplined for such consumption. When James confronted Le May during his firing about why the Hispanic employees were not punished for their consumption in the same manner, James alleges that Le May laughed and said, "We can't catch them all."

Fiesta disputes James' allegations that anyone who used "nigga" was either a manager or an official of the company. Fiesta also sought during summary judgment to strike certain portions of James' evidence pertaining to his co-workers, alleging that James did not sufficiently identify those individuals to put Fiesta on notice of his claims. Le May stated in his declaration that he had no knowledge of harassment nor any complaints James had about the work environment.

In April 2009, James, proceeding *pro se*, filed this discrimination/retaliation action under Title VII against Fiesta in the district court. After a brief period of discovery, Fiesta moved for summary judgment in October 2009. On January 14, 2010, the district court granted Fiesta's motion for summary judgment, ordered that James take nothing, and denied the motion to strike as moot. James filed a timely appeal to this court.

II.

A.

We review a district court's grant of summary judgment *de novo*. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010). Movants bear the initial burden of demonstrating an absence of material fact issues. *Forsyth v.*

No. 10-10107

*Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  If the movant meets that burden, however, the nonmoving party must then identify evidence in the record which creates a material fact issue for which it would bear the burden of proof at trial. Fed. R. Civ. P. 56(e).  "[A] dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.

1.

James' complaint focuses primarily on his termination for theft, which James claims was either racially discriminatory or retaliatory.[2]  Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination "against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), created a burden-shifting framework for Title VII discrimination claims which rely on circumstantial evidence.  The factors necessary to establish a prima facie case include: (1) membership in a protected class; (2) qualification for the position at issue; (3) subjection to an adverse employment action; and (4) treatment that was less favorable than similarly situated persons outside the protected class.[3]  *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir.

---

[2] James also appeals summary judgment on a Title VII hostile work environment claim based on the racial slurs used by his co-workers.  While racially offensive terms certainly have no place in civilized society, we cannot say that his allegations regarding "casual" use of the term which he complained about "three or four times" arise to the level of severity or pervasiveness necessary to sustain his claim. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (requiring severe or pervasive conduct that creates objectively hostile work environment, not simple epithets that engender offensive feelings, to implicate Title VII). Accordingly, we AFFIRM the district court's grant of summary judgment on this claim.

[3] Some cases discuss another factor which required that in discriminatory discharge cases a plaintiff have been replaced by a worker outside plaintiff's protected class. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).  However, this circuit has eliminated that

No. 10-10107

2004).  Once a prima facie case has been established, the burden shifts to the employer to provide a non-discriminatory reason for the discharge – the employer's burden is one of production, not persuasion.  *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).  The plaintiff can still prevail if he can demonstrate that the proffered reason was a pretext for the discriminatory motive, *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000), or if the employer had "mixed motives" for the adverse action, one of which was discriminatory, *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010).  To show pretext, a plaintiff may prove that the reason proffered by the employer for termination is unworthy of credence, or that the employer's decision was more likely motivated by discriminatory reasons.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981).

James is a member of a protected class who was terminated by Fiesta, and Fiesta does not contest his qualifications for a stocker position.  Fiesta contends that James has failed to produce summary judgment evidence showing more favorable treatment to co-workers.  We agree.  James claims that his Hispanic co-workers received preferential treatment from Fiesta because they were allowed to consume non-free items without adverse action.  However, James has failed to identify with particularity any actual person who meets this vague description.  Nor did he properly allege – much less produce evidence showing – that any relevant management officials from Fiesta knew about the alleged actions taken by James' Hispanic co-workers.  Without more, James has failed to carry his initial burden in making out a prima facie case.

Even assuming *arguendo* that James has made out a prima facie case, Fiesta provided a valid, non-discriminatory reason for his firing – theft of a non-free food item.  James counters that the reason for the discharge was pretextual

---

factor as a prerequisite for liability.  *See Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000).

No. 10-10107

based on his summary judgment evidence that Hispanic co-workers were not disciplined for the same infraction of corporate rules. This argument fails for the same reason: James' general statement is non-specific and does not identify the particular Hispanic co-workers he is referring to.[4]

2.

James also argues that his discharge came in retaliation for his harassment complaints. Retaliation claims are also subject to the *McDonnell Douglas* framework. "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). James alleges that his complaint to manager Mike Mayo about the use of racial slurs in the workplace was not acted upon, and that five days later he was terminated for theft even though Hispanic employees were not punished for engaging in the same activity. Thus James has shown he engaged in a protected activity through his complaint of discriminatory conduct, and he suffered an adverse employment action upon termination.

For purposes of a prima facie case, the timing of the adverse decision and its proximity to protected activity can establish an inference of causal connection. *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002); *see also Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001) (five day proximity can establish prima facie evidence of causal connection for retaliation claim). We assume *arguendo* that James therefore established a prima facie case of retaliatory discharge by alleging a five day gap between his complaint to Mayo

---

[4] This vague, non-specific allegation regarding his Hispanic co-workers contrasts markedly with James' ability to identify specific co-workers who allegedly used racial slurs on specific dates in the workplace.

No. 10-10107

and his firing by Le May. Once an employer produces evidence of a valid reason for the adverse action, however, our decision in *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), makes clear that a plaintiff cannot rely solely on suspicious timing to carry his burden at the pretextual stage of the burden-shifting framework. In the face of evidence of a non-retaliatory reason for the adverse action, a plaintiff must show that retaliatory motives were the but-for cause of that action. *Id.* James has produced no such evidence.

Le May filed a declaration unequivocally stating that he had no actual knowledge of any of James' complaints prior to his termination. This unrebutted evidence also supports Fiesta's argument that the termination was not connected with James' harassment complaints. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) (holding that plaintiffs cannot establish causal link when decision-makers were unaware of protected activity). James simply has not made a contrary showing.

III.

For the foregoing reasons, the judgment of the district court is affirmed.[5]

AFFIRMED.

---

[5] James seeks to sanction counsel for Fiesta for alleged unreasonable delay of this matter's resolution for their failure to expeditiously serve James with their appellate brief, which James claims caused his reply brief to be untimely filed. Instead of immediately seeking sanctions, James' proper remedy would have been to request an extension in order to file his reply brief. *See* 5TH CIR. R. 26.2. Accordingly, the motion for sanctions is DENIED.